THE SOUTHWESTERN RAILROAD COMPANY, plaintiff in error, *vs.* WILLIAM W. CHAPMAN, guardian, defendant in error.

A defendant in a suit at common law cannot, by plea, set up an equitable defense and obtain a decree in his favor, where a Court of chancery would refuse it, on a bill filed by him for the purpose, for want of proper parties. Hence, if a guardian sue a corporation for dividends belonging to his ward, the company cannot, by an equitable plea, avail themselves, as a defense of the fact, that they paid the dividends to one not authorized to receive them, and that the money was applied to the support of the ward by the person receiving it, that person not being a party to the suit.

Equitable defense at law. Parties. Before Judge COLE. Bibb Superior Court. November Term, 1871.

William W. Chapman, as guardian of Tallulah B. Chapman, brought complaint against the Southwestern Railroad Company for the sum of $767, besides interest, dividends upon stock owned by his said ward in said company. The defendant filed the following plea:

"And now comes the defendant, by its attorneys, Lyon, DeGraffenreid & Irvin, and defends the wrong and injury when, etc., and for plea and answer in this behalf says, that said plaintiff ought not further to have and maintain his action aforesaid against the defendant, because it says that at he death of Ambrose Chapman, the father of the said Tallulah B. Chapman, there was only thirty-five shares of stock

on the books of this defendant standing in the name of the said Tallulah B.; that after the death of the said Ambrose, the donor of the said thirty-five shares to the said Tallulah B. Chapman, B. F. Chapman, as executor of the said Ambrose, drew dividend number twenty-six, amounting to the sum of $175, on said thirty-five shares of stock, and immediately thereafter invested said sum so paid him by the treasurer of the company in two additional shares of stock, for which he paid the sum of $........, which he, the said B. F. Chapman, executor, caused to be entered in the name of the said Tallulah B.; that afterwards, viz.: on the 21st day of August, 1867, the said B. F. Chapman, as executor of the said Ambrose Chapman, drew the sum of one hundred and forty-eight dollars, ($148,) being the amount of dividends due upon the thirty-seven shares of stock, two shares of which had been purchased by him, as aforesaid, with the money of this defendant, paid to him for the previous dividend on the thirty-five shares of stock, and the balance over and above that amount paid out of his own funds. And this defendant is informed and believes, and so avers the fact to be, that the said B. F. Chapman, executor, is now, and has been since the commencement of this suit, beyond the jurisdiction of the State of Georgia, in parts unknown to this defendant, dead or insolvent, (?) so that this defendant cannot get the benefit of his testimony, or make him liable for said dividends. And this defendant prays that, so far as the said two shares of stock are concerned, they having been purchased with the proceeds of the dividends drawn from this defendant by the said B. F. Chapman, executor, that the same may be allowed to this defendant in bar of so much of the plaintiff's demand as was the value of said two shares of stock at the time they were so purchased and paid for by the said executor with funds drawn by him from this defendant, as aforesaid, and that such verdict or decree may be rendered by the jury, under the direction of the Court, in reference thereto, as may accord with the principles of equity and justice.

"And for further plea and answer in this behalf, as to dividends numbers twenty-eight, twenty-nine and thirty, as set out in plaintiff's declaration, this defendant says that the same were paid by this defendant, in the utmost good faith, to Martha A. Chapman, the mother and natural guardian of the said Tallulah B., (she, at the time, having no other guardian,) and that the said several sums of money so paid by this defendant to the said Martha A. were by her paid out and expended for the support, education and maintenance of the said Tallulah B., and for her sole and exclusive use, and that such payments so made to her by this defendant, and so paid by the said Martha A., were suited to the circumstances and conditions of the said Tallulah B., and rendered absolutely necessary by the peculiar condition of the said Tallulah B. at the time; and without said sums of money so paid by this defendant at the times and in the manner said payments were made, not only would the said Tallulah B. have been deprived of the absolute necessaries of life, but also her education would have been neglected at the most important period of her life; wherefore, in view of the facts, secondly, above pleaded, this defendant prays that such a verdict may be rendered in said case as will be in accordance with the principles of equity and justice, and fully protect this defendant in the premises. All of which this defendant is ready to verify, and puts itself upon the country."

Evidence was introduced in support of the above pleas. The defendant requested the Court to charge the jury, "that if it appears, from the evidence, that Tallulah B. Chapman got the benefit of such dividends as were drawn by the mother from the Southwestern Railroad Company, her present guardian is not entitled to compel the railroad company to pay those dividends a second time; or if the estate of Tallulah B. Chapman received the benefit of those dividends, and they were used partly for her education, maintenance and support, and partly for repairs in keeping up her estate, so that the whole were thus expended by the mother, then the present guardian was not entitled to recover them again."

The Court charged that the above request was law, but inapplicable to the case, to which defendant excepted.

The Court was further requested to charge the jury as follows: "The jury may, under the evidence in this case, so mould their verdict as to do full justice to the parties, and in the same manner as a decree in equity, just as if this were a proceeding in equity instead of an action at law."

The Court charged this last request, but defendant excepts upon the ground that its force and effect was destroyed by a refusal to charge the request immediately preceding.

The Court further charged the jury as follows: "That if it appears, from the evidence, that the railroad company had paid to Mrs. M. A. Chapman, the mother, dividends upon stock which was the property of Tallulah B. Chapman, and that Mrs. M. A. Chapman was not the guardian of Tallulah B., and had not given bond, as required by law, such payment was illegal, and the company is liable unless it appears that she invested such dividends in property for the benefit of Tallulah B., which property had subsequently been acccepted by her guardian in lieu of said dividends."

To which charge defendant excepted.

The jury returned the following verdict:

"We, the jury, find for the plaintiff $767, the amount of dividends paid to the administrator of Ambrose Chapman, by the Southwestern Railroad Company, except $180 paid for the two shares of stock purchased by the administrator for Tallulah Chapman, with interest from the commencement of suit for the same."

Plaintiff in error assigns the refusal of the Court to charge, and the charge as given as error.

W. K. DeGraffenreid; Lyon & Irvin, for plaintiff in error.

Poe, Hall & Poe, for defendant.

MONTGOMERY, Judge.

I am not satisfied with the decision of the Court as rendered in this case—that the Southwestern Railroad was responsible to the guardian of the minor for the amount of the dividends sued for, and for which the jury found a verdict, is unquestionable. But the plea of the defendant was substantially a plea of set-off for necessaries furnished the infant, and evidence was introduced in support of the plea. No objection was made to the plea that it did not set forth with sufficient distinctness the items of the set-off. If such objection had been made, the plea might have been amended, if necessary. Under this view I think the defendant was entitled to the charge asked, which the Court said was law but not applicable to the case, and that the practice in equity of making all persons interested parties has nothing to do with the case. The Court, as I now think, was misled by looking to the verbiage rather than the substance of the plea. If I am correct, no other party was necessary or proper to be made, but the case should have gone to the jury with instructions to find for the plaintiff whatever amount of dividends he had proved was paid to the executor of Ambrose Chapman unaccounted for, and to the mother and natural guardian of the ward, less the amount of the defendant's money (if any) shown to have been expended in necessaries for the infant at a time when there was no other source from which to supply her needs. I agree fully with the Chief Justice that both Courts of law and equity are bound by the 1794th section of the Code. But because the railroad violated the provisions of that section, does that estop it from recovering by way of set-off, money paid, laid out, and expended for necessaries to the infant? I think not. I regret this, what I now conceive to be, mistake of the Court—but less than I otherwise would do from the fact that the railroad has since filed a bill in accordance with the intimation of the Court, which will secure its rights if, in fact, any of its money has been expended for necessaries for the ward

of the defendant in error. It is not surprising that, in the hot haste with which we are compelled to throw off the decisions of this Court, owing to the heavy pressure of business upon it, some of us should afterward be dissatisfied with its rulings. These are my individual views. The judgment of the Court below stands affirmed as set forth in the head note.

Judgment affirmed.

WARNER, Chief Justice, concurring.

The 1794th section of the Code declares that the natural guardian cannot demand or receive the property of the child until a guardian's bond is filed and accepted by the Court of Ordinary of the county; and this applies as well to the income of the property as to the *corpus* thereof. It is the declared public policy of the State, for the protection of the rights of minor children, and is as imperative and binding in Courts of equity as in Courts of law. Equity follows the law in such cases, and cannot override and control it; that is to say, a Court of equity is as much bound by the provisions of a positive statute as a Court of law.